Frederick Melms Esq.
SBN 1093957
Melms2010@gmail.com
6329 Spindrift Foam Ave
Las Vegas, Nevada 89139
Telephone: (715) 892-3023

*Attorney for Plaintiff*
*Shannon Jensen*

UNITED STATES DISTRICT COURT

DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BR b/n/f SHANNON JENSEN; SHANNON JENSEN indiviudally and on behalf of themselves and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WAUKESHA BOARD OF EDUCTION; SCHOOL DISTRICT OF WAUKESHA; JOSEPH COMO JR.; JAMES SEBERT; BILL BAUMGART; GREG DEETS; PATRICK MCCAFFERY; COREY MONTIHO; KELLY PIACSEK; KARIN RAJNICEK; AMANDA RODDY; ANTHONY ZENOBIA; and Does 1-10 on behalf of themselves and those similarly situated,<br><br>Defendants. | Case No. 2:21-cv-01151-SCD<br><br>**Ex Parte Motion for Provisional Class Certification and Temporary Restraining Order and Declaration of Frederick Melms.** |

### Ex Parte Motion for Provisional Class Certification and Temporary Restraining Order.

BR b/n/f SHANNON JENSEN, SHANNON JENSEN individually and on behalf of themselves and those similarly situated, by and through her attorney of record FREDERICK MELMS ESQ, moves for an Ex Parte order certifying a Plaintiff Class and a Defendant Class for the purposes of a Temporary Restraining Order and a Temporary Restraining Order ordering that all K-12 public schools without mandatory masking implement a mandatory masking policy. This

-1-

motion is made based on the Declaration of Shannon Jensen, the Complaint for Declaratory and Injunctive Relief, the attached Exhibits including the report of Doctor Ramzy Rimawi M.D., and the Memorandum of Points and Authorities.

## I. INTRODUCTION

The instant case stems from the May 12, 2021, decision by the Waukesha Board of Education (Hereinafter "BOARD") to remove many of the Covid-19 mitigation measures from School District of Waukesha (Hereinafter "WSD") Schools. Most importantly, the WSD removed the requirement that students, staff, faculty and visitors wear face masks while in their schools. This decision was reckless and made without the considering the safety of students or the community, and in direct defiance of the recommendations from the Centers for Disease Control and the Wisconsin Department of Public Instruction. See Exhibit 1 (Report of Doctor Ramzy Rimawi M.D.).

The WSD was not alone in their decision to remove covid mitigation strategies from their schools for the 2021-2022 school however, many school districts around the state of Wisconsin decided to make similar decisions. The failure of school districts to fulfill their duties under the Fourteenth Amendment to the Constitution of United States and laws of Wisconsin is currently and will continue to irreparably injure students and the community by causing illness and death.

Plaintiff respectfully requests a temporary restraining order ("TRO") to avoid further harm. In the instant case, Plaintiff is likely to succeed on the merits because Defendants' failure to implement covid-19 mitigation measures violates the Constitution and constitutes a public nuisance. Should emergency relief not be granted, Plaintiff and students throughout the state of Wisconsin face irreparable harm in the form of illness and death caused by the Covid-19 virus. By contrast, neither Defendants nor the public would be harmed by a TRO forcing the implementation of the universal masking policy recommended by both the Centers for Disease Control and Wisconsin Department of Public Instruction.

## II. **FACTUAL HISTORY OF THE CASE**

COVID-19 also known as COVID and the coronavirus, is a contagious disease caused by severe acute respiratory syndrome coronavirus 2 or (SARS-CoV-2). The virus has an incubation period between two and fourteen days and is highly contagious and deadly see Exhibit 1 (Doctor Ramzy Rimawi M.D.). Covid-19 can cause a myriad of symptoms ranging from a fever or chills, a cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, a headache, a loss of taste or smell, a sore throat, congestion or runny nose, nausea or vomiting, diarrhea, organ failure, and respiratory failure. See Exhibit 2, (Covid-19 Symptoms).

The Covid-19 pandemic drastically changed the K-12 schooling during the Spring of 2020. All Wisconsin schools were shut down by order of Governor Evers and most students were taught virtually. See Exhibit 3, (Emergency Orders).

On August 10, 2021, the Wisconsin Department of Public Instruction (hereinafter "DPI") released a publication entitled COVID-19 Infection Control and Mitigation Measures for Wisconsin Schools 2021/2022. See Exhibit 4. In the COVID-19 Infection Control and Mitigation Measures for Wisconsin Schools 2021/2022, the Wisconsin Department of Public Instruction makes several recommendations for steps Wisconsin schools should take to limit the spread of Covid-19. Specifically, the DPI recommends that schools encourage children and staff who have been exposed to COVID-19 to stay home and get tested, encourage good hand hygiene, promote vaccination to eligible students and staff, maintain a policy of physical distancing between students and staff, limit non-essential visitation to the schools, establish contact tracing programs, improve ventilation where possible and disinfect surfaces within the school on a daily basis. Finally, the DPI recommends that all Wisconsin schools institute mandatory masking policies for students and staff.

On August 5, 2021, the Centers for Disease Control (hereinafter "CDC") published their most recent Guidance for COVID-19 Prevention in K-12 Schools. See Exhibit 5. The CDC also recommends that schools encourage children and staff who have been exposed to COVID-19 to stay home and test, encourage good hand hygiene, promote vaccination to eligible students and staff, maintain a policy of physical distancing between students and staff, limit non-essential

visitation to the schools, establish contact tracing programs, improve ventilation where possible and disinfect surfaces within the school on a daily basis. The CDC also recommends that schools implement universal masking policies.

During the Spring of 2020, The School District of Waukesha held classes remotely, this policy continued to varying degrees into the 2020-2021 School year, but on October 14, 2020, the BOARD voted to begin to return children to full time in person schooling. See Exhibit 6 (October 14 School Board minutes). In order to keep their students safe from Covid-19, the Waukesha School district had a robust Covid-19 mitigation strategy that included mandatory masking. During the 2020-2021 School year BR and his two siblings attended Rose Glen Elementary School which had several different Covid-19 infection mitigation strategies in place. These strategies included universal masking, regular body temperature checks, and plexiglass dividers. See Exhibit 7, (Declaration of Shannon Jensen).

On May 12, 2021, The Board of Education for the School District of Waukesha voted to end many of their Covid-19 mitigation policies, including their universal masking requirement. See Exhibit 8, (May 12, 2021, School board minutes). When the 2021-2022 School year began, BR returned to school and wore a mask daily. Many of BR's classmates chose not to wear masks to school, however. Then, on September 16, 2021, one of BR's classmates came to school with Covid-19 symptoms. The following day, on September 17, 2021, that same student visited the school nurse twice and was eventually sent home due his Covid-19 symptoms. BR was seated next to his sick classmate on both days. BR's sick classmate did not wear a mask to school. On September 19, 2021, BR became symptomatic and tested positive for Covid-19. Unfortunately, on September 18 and 19, 2021, BR attended multiple community events likely spreading Covid-19 to members of the community.

### III. MEMORANDUM OF POINTS AND AUTHORITIES

**Temporary Restraining Order Standard**

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the

-4-

Motion for Preliminary Injunction

adverse party can be heard in opposition; and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required" Fed. R. Civ. P. 65.

"Fed. R. Civ. P. 65 "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. See *Munaf v. Geren,* 553 U.S. 674, 689-690, 128 S.Ct. 2207, 2218–2219, 171 L.Ed.2d 1 (2008); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ; *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311–312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)". *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "In W*inter v. Nat. Res. Def. Council, Inc.* , 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), the Court stated that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits." *Id*. at 20, 129 S.Ct. 365 (emphasis added). Similarly, when discussing the requisite showing to establish irreparable injury, the Court explained that its standard "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). "If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it. *Courthouse News Serv*. , 908 F.3d at 1068. This balancing process involves a "sliding scale" approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa. *Ty*, *Inc. v. Jones Grp*., Inc. , 237 F.3d 891, 895 (7th Cir. 2001). Mandatory preliminary injunctions—those "requiring an affirmative act by the defendant"—are "ordinarily cautiously viewed and sparingly issued." *Graham v. Medical Mut. of Ohio* , 130 F.3d 293, 295 (7th Cir. 1997) ; see also *Pashby v. Delia* , 709 F.3d 307, 319 (4th Cir. 2013) (review of a preliminary injunction is "even more searching" when the injunction is "mandatory rather than prohibitory in nature.") *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "In balancing the harms , the court also considers the public interest" *Life Spine Inc. v. Aegis Spine, Inc.*, 21-1649, at *1 (7th Cir. Aug. 9, 2021).

**Legal Argument**

a. **Plaintiff is Likely to Succeed on the Merits**

Plaintiff's Complaint for Injunctive and Declaratory relief brings three claims before this court. First, the Defendants and all school boards and school districts throughout the state of Wisconsin have a duty to protect BR and all similarly situated students from Covid-19 under the Fourteenth Amendment as school districts created a risk of infection by bringing students back to school from virtual learning. Second, the Defendants and all school boards and school districts throughout the state of Wisconsin have a duty to BR and all similarly situated students under the Fourteenth Amendment due to the special relationship between students and school districts created by the circumstances surrounding the Covid-19 pandemic. Finally, the Defendants and all school boards and school districts throughout the state of Wisconsin have a duty to BR, all similarly situated students, and the community as a whole to limit the rates of infection within their schools under the public nuisance doctrine.

    i.        **Plaintiff's First Claim for Relief.**

Defendants and all similarly situated school districts and school boards owe BR and all similarly situated students a duty to protect them from Covid-19 under the Fourteenth Amendment to the Constitution of the United States. "To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law. *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir.2009). Although the Due Process Clause of the Fourteenth Amendment prevents the state from infringing on an individual's right to life, liberty, or property, it does not "impose an affirmative obligation on the [s]tate to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The Due Process Clause limits the state's power to act, but does not act "as a guarantee of certain minimal levels of safety and security." *Id*. at 195, 109 S.Ct. 998. Accordingly, the Clause generally does not impose upon the state a duty to protect individuals from harm by private actors. *Id*. at 197, 109 S.Ct. 998. However, two exceptions have grown out of this general principle. The first obligates the state to protect individuals with whom it has a "special relationship," such as a custodial relationship that cuts off alternative avenues of aid. *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir.1998). The other is the "state-created danger exception," which

applies when a state actor's conduct "creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger that they otherwise would have been." *Reed v. Gardner*,986 F.2d 1122, 1126 (7th Cir.1993 *D.S. v. E. Porter Cnty. Sch. Corp*., 799 F.3d 793, 798 (7th Cir. 2015). To prevail under a state-created danger theory a Plaintiff "must show three things: (1) that the state—here, East Porter—by its affirmative acts, created or increased a danger that D.S. faced; (2) that East Porter's failure to protect D.S. from danger was the proximate cause of her injury; and (3) that East Porter's failure to protect D.S. shocks the conscience." See K*ing ex rel. King v. East St. Louis Sch. Dist*. 189,496 F.3d 812, 818 (7th Cir.2007). *Id* at 798. Ultimately, "If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)

Defendants clearly increased the danger of infection to BR when they ended their virtual learning program and brought him back into Rose Glen Elementary. During parts of the 2019-2020 and 2020-2021 school years schools within the School District of Waukesha and throughout Wisconsin were closed and BR and similarly situated students attended school virtually. When BR and similarly situated students were attending classes virtually from home their risk of exposure to Covid-19 was limited to exposure from their immediately family, but when the school districts took the affirmative action of bringing students back to class and by allowing visitors to enter their schools unmasked and untested they threw BR and other similarly situated students into a "Covid-19 snake pit" and are now obligated under the Fourteenth Amendment to protect them from a Covid-19 infection.

Similarly, BR's infection was clearly caused by the Defendants' failure to protect him from Covid-19. BR was sitting in a classroom with unmasked infected students and then became infected with Covid-19 himself. This situation was not unique to Defendant and has occurred thousands of times around the state of Wisconsin and could have likely been avoided through following the advice of public health officials. See Exhibit 1. The behavior of the Defendants and many school boards around the state also shocks the conscious. They have each made the decision during a global pandemic to ignore the guidance of the experts at the Centers for Disease Control and the Wisconsin Department of Public Instruction and instead unnecessarily expose children to a deadly infection.

-7-

Case 2:21-cv-01151-SCD   Filed 10/15/21   Page 7 of 17   Document 6

Motion for Preliminary Injunction

As Defendants and similarly situated school boards and school districts have taken actions to affirmatively increase the danger of Covid-19 infection to Students, are the proximate cause of Covid-19 infections and are acting in a way that shocks the conscious, Plaintiff will prevail on her first claim for relief.

### ii. Plaintiff's Second Claim for Relief.

Defendants and all similarly situated school districts and school boards owe BR and all similarly situated students a duty to protect them from Covid-19 under the Fourteenth Amendment to the Constitution of the United States because of the special relationship that Covid-19 has created between School Districts and Students. While the courts have been unwilling to find a special relationship between schools and school children in the past, the Covid-19 pandemic changes that analysis. "Our court, in dealing with the "special relationship " exception to the *DeShaney* doctrine, has remained faithful to the Supreme's Court's rationale that this exception must be grounded in a prior restriction of the individual's liberty that places that person in a danger that would not have been encountered, at least to the same order of magnitude, in the absence of the state's action. For instance, in *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990), the City of Waukegan was determined to be not liable for failing to save the drowning plaintiff because the city had no duty to provide rescue services. *Id*. at 1428. By contrast, the claim against Lake County was reinstated because the plaintiff had alleged that the county had a custom of requiring officers to prevent unauthorized persons from trying to rescue the drowning. The court distinguished *DeShaney*, holding that the alleged policy would constitute an active imposition that put people at harm, not a refusal to provide services." *Kitzman-Kelley ex rel. Kitzman-Kelley v. Warner*, 203 F.3d 454, 458 (7th Cir. 2000). "[w]hen a state actor . . . deprives a person of his ability to care for himself by incarcerating him, detaining him, or involuntarily committing him, it assumes an obligation to provide some minimum level of well-being and safety"). The state's failure to meet this duty of care constitutes a violation of the Due Process Clause of the Fourteenth Amendment." *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th Cir. 2003). Similarly, "when "the state has a 'special relationship ' with a person, that is, if the state has custody of a person, thus cutting off alternative avenues of aid." *Id* ." *Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019)

In the instant case, the Covid-19 pandemic has created a special relationship between the students and schools, because while the students are only in the custody of the school during the

school day, the only individuals capable of protecting them from the Covid-19 infection are the school district employees. Similarly, during the school day, students do not have the ability to protect themselves from Covid-19 infection. They can only be protected by an entire collection of Covid-19 mitigation strategies. See Exhibits 1, 4, and 5. By bringing students into the classroom, the school districts have effectively cut off all avenues of aid to the students, creating a duty by which their school districts must protect them from Covid-19 infections.

The Defendants and similarly situated school districts recklessly breached their duty to protect their students from Covid-19 by refusing to implement the CDC and DPI guidelines and their breach of this duty has resulted in thousands of infections throughout the state of Wisconsin. See Exhibit 1. As such, Plaintiff will prevail on her second claim for relief.

### iii. Plaintiff's Third Claim for Relief.

Defendants and all similarly situated school districts and school boards are maintaining a public nuisance by bringing students to school without effective Covid-19 mitigation strategies in place. " A nuisance is an unreasonable activity or use of property that interferes substantially with the comfortable enjoyment of life, health, safety of another or others. St*ate v. Quality Egg Farm, Inc*., 104 Wis. 2d 506, 517 (Wis. 1981) quoting *Hunter v. McDonald*, 78 Wis.2d 338, 344, 254 N.W.2d 282 (1977) "liability for maintaining a public nuisance can be based on either negligent or intentional conduct that maintains a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community. Second, both notice and causation, concepts oftentimes reserved for negligence cases, are required to establish liability for maintaining a public nuisance. Third, for the purposes of comparing and apportioning responsibility for the accident, and for determining contribution among culpable parties, we conclude that when all of the elements to establish liability for maintaining a public nuisance are affirmatively proven, a defendant's failure to abate a public nuisance is analogous to negligence per se." *Physicians Plus v. Midwest Mut*, 254 Wis. 2d 77, 101-02 (Wis. 2002).

Covid-19 is spreading rampantly through the defendants' school district and similarly situated school districts throughout the state. See Exhibit 1. The children who are infected at school then leave the school grounds and head into the community spreading the disease to the general public interfering with the health and safety of the entire state. The defendants and similarly situated school boards and districts have been provided with notice in the form of guidance from both the

CDC and DPI on how to mitigate the spread of covid-19 throughout their schools. They are ignoring this guidance and the infection is continuing to spread. See exhibit 1. Defendants and similarly situated school boards are clearly maintaining a public nuisance and it needs to be abated. As such, Plaintiff will prevail on her third claim for relief.

b. **Plaintiff is Likely to Suffer Irreparable Harm without the Preliminary Injunction.**

Defendants' and similarly situated school boards and school districts' failure to protect their students through the implementation of adequate Covid-19 mitigation strategies, will result in irreparable injury to the students and community. Covid-19 is a fatal disease and death cannot be appropriately remedied. See Exhibit 1, 4 and 5.

Further, "for some kinds of constitutional violations, irreparable harm is presumed. See 11A CHARLES ALAN WRIGHT ET ALAN FEDERAL PRACTICE PROCEDURE § 2948.1 (2*d ed. 1995*) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.")." *Ezell v. City of Chicago,* 651 F.3d 684, 699 (7th Cir. 2011). And "Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm. *See Monterey Meek Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997)" *Nelson v. National Aeronautics*, 530 F.3d 865, 882 (9th Cir. 2008)(reversed on other grounds). Plaintiff has clearly demonstrated that Defendants and similarly situated school boards and school districts have violated the rights of BR and similarly situated students under the Fourteenth Amendment to the Constitution of the United States of America. This showing alone is enough to demonstrate that irreparable harm is not only likely, but it has already occurred and is ongoing.

c. **The Balance of Equities Tips Towards the Plaintiff**

The balance of equities greatly favors the Plaintiffs in this matter. "To obtain a preliminary injunction , the moving party must show that its case has "some likelihood of success on the merits" and that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied."*Ezell v. City of Chicago*,651 F.3d 684, 694 (7th Cir.2011). If the moving party meets these threshold requirements, the district court "must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied."*Ty, Inc. v. Jones*

*Group, Inc.*,237 F.3d 891, 895 (7th Cir.2001). The district court must also consider the public interest in granting or denying an injunction .Id. In this balancing of harms conducted by the district court, the court weighs these factors against one another "in a sliding scale analysis." *Christian Legal Soc'y v. Walker*,453 F.3d 853, 859 (7th Cir.2006). "The sliding scale approach is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.' " *Ty, Inc*.,237 F.3d at 895–96 (quoting *Abbott Labs. v. Mead Johnson* & Co.,971 F.2d 6, 12 (7th Cir.1992)). Stated another way, the district court "sit[s] as would a chancellor in equity" and weighs all the factors, "seeking at all times to 'minimize the costs of being mistaken.' " *Abbott Labs*.,971 F.2d at 12 (quoting *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd*.,780 F.2d 589, 593 (7th Cir.1986)). *Stuller, Inc. v. Steak N Shake Enters., Inc*., 695 F.3d 676, 678 (7th Cir. 2012).

When the court considers the balance of equities in the matter, the first thing they should consider is the efficacy of mandatory masking policies and the DPI and CDC guidelines. See Exhibit 1. Should the Defendants and similarly situated school districts implement these guidelines its clear that the rates of infection within their schools should decrease.

Under a sliding scale analysis, the balance of equities tips towards the Plaintiff. The Plaintiff has a made a showing that they are likely to succeed on the merits and that without the TRO there will be irreparable harm in the form of death and the violation of constitutional rights. Whereas there is no risk of injury to the defendants or similarly situated school boards should the TRO be put into place, they would merely be following the guidance of the CDC and DPI.

d. **It is in the Public Interest that the Court Grant the Preliminary Injunction**

Covid-19 is a deadly and infectious disease. See exhibit1. The public has a clear interest in reducing the spread of Covid-19 within the schools and the community and as such granting this TRO is within the interest of the public.

e. **Bond Should Not Be Required.**

FRCP 65(c) requires that "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." This TRO is exclusively asking for an order mandating students wear masks to class

-11-
Case 2:21-cv-01151-SCD   Filed 10/15/21   Page 11 of 17   Document 6
Motion for Preliminary Injunction

the cost to Defendants should be negligible as most masks would be provided by the students. As such a bond is unnecessary in this matter.

   f. **Provisional Class Certification.**

Plaintiff is requesting that this court provisionally certify 2 classes for the purposes of this TRO under Federal Rule of Civil Procedure 23(b)2. Provisional class certification is appropriate for both a Plaintiff class and Defendant Class because final class certification will be appropriate in this matter. Class certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23(a), the party seeking certification must demonstrate, first, that:

"(1) the class is so numerous that joinder of all members is impracticable,

"(2) there are questions of law or fact common to the class ,

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class , and

"(4) the representative parties will fairly and adequately protect the interests of the class " (paragraph breaks added).

Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Respondents rely on Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class , so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Provisional class certification is appropriate in this matter Plaintiff and Defendant classes satisfy the numerosity, commonality, typicality and adequacy requirements of Rule 23(a). The Plaintiff Class consists of all public-school K-12 students who have been infected with Covid-19 while at school, this number is believed to be greater than 1000, satisfying the numerosity requirement. See exhibit 1. The Defendant class consists of school boards, school board members, superintendents and school districts refusing to implement the face mask requirement recommended for K-12 Schools by the DPI and CDC satisfying the numerosity requirement. While Plaintiff has not yet determined this number it is believed to be so great that joinder would be impractical if not impossible.

Similarly, the claims of Shannon Jensen individually, and as next friend of BR share common questions of law and fact with the claims of the absent members of the Plaintiff class satisfying the commonality requirement. As the Plaintiff claims are share common questions of law and fact so do the defenses of the named and absent Defendant class also satisfying the commonality requirement.

The typicality requirement is also satisfied by both the Plaintiff and Defendant classes. the claims Shannon Jensen individually, and as next friend of BR brings, have a common origin and share a common basis with the absent class members. Their claims originate from reckless refusal of both the named and absent school boards and school districts to implement reasonable Covid-19 mitigation measures. As such, both the Plaintiff and Defendant Classes meets the typicality requirement.

Plaintiff Shannon Jensen is willing and prepared to serve the Court and proposed class in a representative capacity with all of the obligations and duties material hereto. She will fairly and adequately protect the interest of the class and has no interests adverse to, or which directly and irrevocably conflict with, the interests of other members of the class. She has also engaged the services of counsel indicated below. Said counsel has experience in civil rights and class litigation, will adequately prosecute this action, and will assert, protect and otherwise well represent the named class representatives and absent class members.

The named Defendants are from a relatively large and wealthy school district and should have the means to defend this action. Given that the action is exclusively for declaratory and injunctive relief there should not be any conflict between the named and absent Defendant Class members. Similarly, this action focuses almost exclusively on questions of law and is not particularly fact specific, as such if the named Defendants' counsel adequately represents the named Defendants, they are also adequately representing the class.

Further, certification under the Federal Rule of Civil Procedure 23(b)(2) is appropriate in this matter. Certification under Federal Rule of Civil Procedure 23(b)(2) is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. In this matter all of the parties within the proposed Defendant class have undertaken the same reckless conduct causing the same type of injury to every member of the proposed Plaintiff class. Plaintiffs are also only requesting declaratory and injunctive relief which will apply

generally to both classes, so certification under Federal Rule of Civil Procedure 23(b)(2) is appropriate.

## VI. Conclusion

As the Plaintiff is likely to prevail on the merits of the case, there will be irreparable harm without a temporary restraining order, the balance of the equities favors the Plaintiff and public policy dictates that a temporary restraining order be put in place, Plaintiff requests a temporary restraining order, ordering all school districts refusing to enact the Covid-19 mitigation recommendations of the CDC and DPI to enact a universal mask mandate. While Plaintiff will eventually be asking for broader injunctive relief, Plaintiff believes that a universal mask mandate in Wisconsin schools will be a reasonable stop gap measure until this court has the opportunity to hold a preliminary injunction hearing. See Exhibit 1. In the alternative, Plaintiff would ask for a temporary restraining order ordering a mask mandate in the Waukesha School District schools.

DATED: October 15, 2021

By: /s/ Frederick Melms
    Frederick Melms
    Attorney for Plaintiff
    Shannon Jensen

Frederick Melms
6329 Spindrift Foam Ave,
Las Vegas NV, 89139
715-892-3023
fbmelmsesq@gmail.com

# UNITED STATES DISTRICT COURT

# DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BR b/n/f SHANNON JENSEN, on behalf of themselves and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SCHOOL DISTRICT OF WAUKESHA; WAUKESHA BOARD OF EDUCTION; JOSEPH COMO JUNIOR; JAMES SEBERT; BILL BAUMGART; GREG DEETS; PATRICK MCCAFFERY; COREY MONTIHO; KELLY PIACSEK; KARIN RAJNICEK; AMANDA RODDY; ANTHONY ZENOBIA; AND DOES 1-10, on behalf of themselves and those similarly situated,<br><br>Defendant | Case No.: 2:21-cv-01151-SCD<br><br>**DECLARATION OF FREDERICK MELMS** |

### Declaration of Frederick Melms Pursuant to 28 U.S. Code § 1746

I, Frederick Melms, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1. I am the attorney for the Plaintiff in the instant case.

2. Defendants have been provided notice of this action through personal service.

3. Defendants' attorneys electronically filed notices of appearance for this action on 10/14/2021

DECLARATION OF FREDERICK MELMS - 1

4. Defendants by and through their attorneys will receive notice of this TRO through the electronic court filing system.

5. Upon filing, I will also provide a copy of the TRO via email to Defendants' attorneys.

6. This court should still consider this TRO ex parte due to the danger of inaction outlined in the motion for the TRO and Exhibit 1 of the TRO.

**Executed on October 15, 2021**

*Frederick Melms*

**Frederick Melms**

DECLARATION OF FREDERICK MELMS - 2