UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

B.R. b/n/f SHANNON JENSEN,
SHANNON JENSEN, individually and
on behalf of themselves and those
similarly situated,

        Plaintiffs,                Case No.:     2:21-CV-01151

    v.

WAUKESHA BOARD OF EDUCATION;
SCHOOL DISTRICT OF WAUKESHA;
JOSEPH COMO, JR; JAMES SEBERT;
BILL BAUMGART; GREG DEETS;
PATRICK MCCAFFERY, COREY MONTIHO;
KELLY PIACSEK; KARIN RAJNICEK;
AMANDA RODDY; ANTHONY ZENOBIA; and
Does 1 – 10 on behalf of themselves and those
similarly situated,

        Defendants.

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION AND TEMPORARY RESTRAINING ORDER

NOW COMES Defendants, Waukesha Board of Education (hereinafter "Board"); School District of Waukesha (hereafter "District"); Joseph Como, Jr; James Sebert; Bill Baumgart; Greg Deets; Patrick McCaffery; Corey Montiho; Kelly Piacsek; Karin Rajnicek; Amanda Roddy; Anthony Zenobia; and Does 1 – 10 (hereinafter collectively "Defendants") who move this Honorable Court to deny the request filed by Plaintiffs B.R., by next friend Shannon Jensen, and Shannon Jensen, individually and on behalf of themselves and those similarly situated (hereinafter "Plaintiffs"), for Provisional Class Certification and a Temporary Restraining Order.

1. **Conditional Class Certification is Inappropriate**.

Plaintiffs seek provisionally class certification for 2 classes, pursuant to Fed. R. Civ. P. 23. The first proposed class would consist of "all public-school K-12 students who have been infected with Covid-19 while at school" (hereinafter "Plaintiff Class"). [Dkt. #6, p. 12]. The second proposed class would consist of, "The named Defendants" (hereinafter "Defendant Class"). [Dkt. #6, p. 13]. The party seeking certification under Rule 23(a) must demonstrate the following:

(1) The class is so numerous that joinder of all members is impracticable,

(2) There are questions of law or fact common to the class,

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) The representative parties will fairly and adequately protect the interests of the class.

With regard to the Plaintiff Class, it is impossible for Plaintiffs to satisfy this burden. First, it will be virtually impossible for Plaintiffs' to prove every member of the Plaintiff Class became infected by COVID-19 "while at school." There are no tests available to identify the location of the infection. There has been no statement – expressed or implied – from the CDC or any medical professionals that claims to be able to ascertain the location of infection.

Second, it will be virtually impossible for Plaintiffs to show common facts among the proposed Plaintiff Class. As explained in more detail below, some of these individuals wore masks in public while some did not, some have parents who masked when outside the home while some did not, some engaged in extracurricular activities while some did not, some have medical conditions that make them particularly susceptible to infection while some do not, some had infected members in the household while some did not, some took full CDC recommended

2

measures to protect themselves from COVID-19 while some did not, some were vaccinated while some were not, etc.

Third, upon information and belief, many individuals within the proposed Plaintiff Class have no interest in being part of said class. In fact, based on the feedback the District received from parents in the District, many parents of the proposed Plaintiff Class members may seek to take legal action against Plaintiffs when they learn Plaintiffs are seeking to force their children to mask.

Finally, upon information and belief, based on medical exemption and/or sincerely held religious beliefs, many individuals in the proposed Plaintiff Class are unwilling and/or unable to wear face masks – which is the relief sought in this case. Plaintiffs cannot possibly claim they will be able to "fairly and adequately protect the interest of the class" when it is highly likely the parents of said individuals will not only be furious to learn of the relief sought by Plaintiffs, but, are highly likely to file separate legal actions against Plaintiffs.

Provisional class certification for proposed Defendant Class is equally baseless. The number of named Defendants is not large enough to justify class certification. In addition, the proposed class consists of: (1) a public school district, (2) a board of education, (3) elected officials, (4) individuals holding local public office, and (5) public employees. Their roles in creating and/or enforcing District policy vary greatly and, as such, cannot be seen to hold a common interest or a common legal defense.

2. **A Preliminary Injunction is Inappropriate**.

Plaintiffs seek "a temporary restraining order, ordering all school districts refusing to enact the Covid-19 mitigation recommendations of the CDC and DPI to enact a universal mask mandate." [Dkt. #6, p. 14]. Considering Plaintiffs only bring this action against the Waukesha

3

School District[1], one has to ask how Plaintiffs can seek a TRO enforceable against all school districts in the State of Wisconsin? That request is absurd as there has even been a claim against any other school district asserting failure to follow the COVID-19 mitigation recommendations of the CDC and DPI. One has to ask – who is responsible for reviewing the COVID-19 mitigation strategies of every school district in Wisconsin, who will decide whether recommendations of the CDC and DPI are being followed by each school district, and how will this Honorable Court assert jurisdiction over those school district outside of the Eastern District? Absolute foolishness.

In the alternative, "Plaintiff would ask for a temporary restraining order ordering a mask mandate in the Waukesha School District schools." [Dkt. #14, p. 14]. This request is almost equally absurd and fails on a number of fronts.

First, Plaintiffs cannot make the requisite showing that without such an injunctive order harm will occur when there are options already in place by the District to more effectively mitigate the potential risk posed by the pandemic. Plaintiffs fail to acknowledge the options available to families within the School District of Waukesha (hereinafter "District") in place to mitigate COVID-19 exposure, namely in the virtual option available through eAchieve, an online charter school partnership.

Second, Plaintiffs fail to acknowledge that, while the CDC, DPI, and DHS recommend mask wearing while indoors, all agencies cite other mitigation measure that can be put in place to combat the spread of COVID-19. In addition, no state of federal agency supports a universal masking policy and, instead, directs every school district to consider the infection rates and trends within their individual locale. Thus, there is no basis for requiring a universal mask mandate.

---

[1] Including the District's Board of Education, Board members, District public official, and certain District employees.

Finally, Plaintiffs' proposed relief of a universal mask mandate runs afoul of the Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964. Under the ADA, a reasonable accommodation must be afforded to those individuals with medical conditions making them unable to wear masks. Under Title VII, a reasonable accommodation must be afforded to those individuals with sincerely held religious beliefs preventing the wearing of face masks. The universal mask mandate proposed by Plaintiffs would infringe upon and run afoul of both laws. For these reasons, Plaintiffs' motion must be denied.

## INTRODUCTION

Defendants do not dispute this is a challenging time, in particular for educators, parents, and students. Navigating a new contagion that has created a global pandemic in which hundreds of thousands of people have lost lives and loved ones, and suffered poor health outcomes, has created ongoing confusion, division, and uncertainty. All along, Defendants have been subject to the unenviable task and test of managing a large school district with staff and children who possess varying degrees of risk and risk tolerance while under constant and evolving threat of the contagion. Balancing appropriate restrictions with personal freedoms, and doing so in a way that mitigates the spread of an ever changing viral disease while preserving the classroom as a special social and academic space, is easily characterized as the most significant undertaking of any educator's career.

On October 15, 2021, Plaintiffs filed a request for "Ex Parte Motion for Provisional Class Certification and Temporary Restraining Order." [Dkt. # 6]. In that request, Plaintiffs ask the Court to certify a Plaintiff Class, certify a Defendant Class, and issue a temporary injunction requiring all public schools in Wisconsin, or alternatively in the District, to mandate mask wearing at school.

5

The problem, and Defendants' basis for opposition to the relief requested by Plaintiffs, is Plaintiffs presented a factual basis that is not an accurate reflection of the academic reality in the District. Plaintiffs failed to include a singularly important consideration available to parents and families in choosing their child's academic path. The District has a partnership with an online charter school, eAchieve.[2] Online school is, in fact, available to every student in the District from 4-year old Kindergarten through 12th grade. There is no requirement that any child be physically present in a Waukesha classroom or near anyone unmasked in order to receive a public school education. Plaintiffs fail to include that important option in their recitation of the "facts," which is a misrepresentation of choices available to families in the District. The District strongly recommends masks in the classroom consistent with Wisconsin Department of Public Instruction (DPI), and Centers of Disease Control (CDC) guidance, then goes one better in terms of mitigation measures for students by offering the safest option available: virtual school.

Furthermore, differences in contagion spread across the state, vaccination rates of adults, and locally tailored mitigation policies in place vary between school districts. Defendants oppose Plaintiffs' request to certify a Plaintiff class so large, so varying, and so diverse as the entire Wisconsin student body population. Plaintiffs cannot show there are questions of fact common across the proposed class as diverse as the elementary and secondary student population of the whole state of Wisconsin as required by Fed. R. Civ. P. 23(a)(2). Additionally, Plaintiffs cannot show typicality in that the claims of this particular Plaintiff may not be typical across the proposed

---

[2] Pursuant to Fed. R. Civ. P. 201(c)(2), Defendants request the Court take judicial notice of their publicly available virtual school policy, eAchieve, which can be located online at https://sdw.waukesha.k12.wi.us/Page/5397. The eAchieve program, as noted on Waukesha School District's website, explains that "students living in any city or school district in Wisconsin are eligible for tuition-free online learning at our academy."

class as required by Fed. R. Civ. P. 23(a)(3). For these reasons, Defendants ask the Court to deny Plaintiffs' dual requests.

## FACTUAL BACKGROUND

The COVID-19 pandemic presents ongoing questions of public health and reasonable mitigation strategies. Instead of being guided by sound reason, medical expertise, and concern for individual and collective risk tolerance, our nation's response to the novel coronavirus has been divisive and politicized. Proponents of one strategy insist on a "one size fits all" response, while opponents to the same strategy insist on an equally uncompromising position. There are no winners. There is little progress when this approach is applied to public social situations, such as the public school classroom. Defendants do not dispute various state and federal agencies have made recommendations regarding COVID-19 mitigation. [Dkt. # 6-2, 6-4, 6-5]. Defendants also agree the Waukesha School Board has devoted considerable time and attention to addressing appropriate mitigation efforts and tactics unique to their District. [Dkt. # 6-6, 6-8]. Defendants also point to an important fact missing from Plaintiffs' pleadings regarding Defendants' strategies, as noted above. Defendants have a virtual learning option in place and available to all District students. Should Plaintiffs have concern about exposing their children or themselves to a school setting without masking, the District already has an option in place. A mask mandate may possibly reduce some instances of COVID-19 transmission; however, it falls far short of the mitigation option already in place for District families: i.e., virtual learning.

## LEGAL STANDARD

In order to qualify for provisional class certification, a Plaintiff must propose a class that satisfies four prerequisites pursuant to Fed. R. Civ. P. 23(a)(1 – 4). First, a Plaintiff must show "numerosity," such that joinder of all members of the proposed class is impracticable. Fed. R.

Civ. P. 23(a)(1). Second, a Plaintiff must show there are questions of law and/or fact common to the class in the "commonality" prong. Fed. R. Civ. P. 23(a)(2). Third, a Plaintiff must show that there is "typicality," and claims or defenses of the party as a representative are typical of the entire proposed class. Fed. R. Civ. P. 23(a)(3). Finally, a Plaintiff must make a showing that the proposed representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). At this stage of proceedings, the evidentiary standard is based on a "preponderance of the evidence." *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587 (7th Cir. 2021).

A preliminary injunction functions as an equitable, and interlocutory form of relief, and for those reasons, is "an exercise of a very far-reaching power, **never to be indulged in except in a case clearly demanding it**." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (Emphasis added). A Court engages in two distinct phases of analysis in determining whether to grant a request for preliminary injunction: a threshold phase and a balancing phase. *Girl Scouts,* 549 F.3d at 1085-86. A moving party must demonstrate three requirements in the threshold phase: (1) without a preliminary injunction, irreparable harm is likely to occur during the interim period before final resolution of claims; (2) traditional legal remedies are inadequate; and (3) the claim has "some likelihood of succeeding on the merits." *Id.*

Should a moving party succeed in satisfying the Court at the threshold phase, the Court conducts a balancing analysis weighing the irreparable harm a movant would suffer without a preliminary injunction against any irreparable harm the respondent party would incur if the court granted the requested relief. *Girl Scouts,* 549 F.3d at 1085-86. This analysis requires an approach much like a "sliding scale": where a plaintiff is more likely to prevail, the balance of harm need not weigh so heavily in his favor; where a plaintiff is less likely to win, the balance of harm must

be far more in favor of the plaintiff. *Id.* Finally, the balancing analysis should also involve consideration for nonparties and any impact on them, which the courts have called the "public interest." *Id.*

Courts have interpreted this rule narrowly, especially at the preliminary stage. *See also Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). Mandatory preliminary injunctions are rare and subject to a higher level of scrutiny, often "cautiously viewed and sparingly issued." *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). A preliminary injunction is an "extraordinary remedy" that "is never awarded as a matter of right." *Whitaker v. Kenosha Unified Sch. Dist. No 1 Bd. Of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017). Furthermore, courts review a preliminary injunction seeking mandatory action with a standard "even more searching" than one seeking a prohibition of conduct by a party. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). The reality established by prior precedent is that "mandatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds." *W.A. Mack, Inc. v. Gen. Motors Corp.,* 260 F.2d 886, 890 (7th Cir. 1958). This is not a case in which that extraordinary action should be taken.

## ARGUMENT

I. **The Court Should Deny Plaintiffs' Request for Provisional Class Certification Because Plaintiffs Failed to Satisfy All Class Certification Requirements by a Preponderance of the Evidence.**

In order to qualify for provisional class certification, a Plaintiff must propose a class that satisfies four prerequisites pursuant to Fed. R. Civ. P. 23(a)(1 – 4), the proposed class must satisfy at least one of the three requirements listed in Rule 23(b), and the class must be clearly defined. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015). Plaintiffs rely on Rule 23(b)(2), which applies when the party opposing the class has acted or refused to act on grounds that apply

9

generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Plaintiffs bear the burden of proving by a preponderance of the evidence that their proposed class satisfies the requirements of the class action rule. *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587 (7th Cir. 2021). The class action rule is more than a mere pleading standard, and thus, in evaluating the factors for class certification, a court does not take the plaintiffs' allegations at face value; instead, the court must go beyond the pleadings and, to the extent necessary, take evidence on disputed issues that are material to certification. *Id.* To certify a class, a district court must find that each requirement of rule governing class actions is satisfied, including numerosity, commonality, typicality, and adequacy of representation, as well as type of class action; failure to meet any of the rule's requirements precludes class certification. *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511 (7th Cir. 2009). The decision whether to certify a class is one that depends on a careful assessment of the facts, of potential differences among class members, of management challenges, and of the overall importance of the common issues of law or fact to the ultimate outcome. *Riffey v. Rauner*, 910 F.3d 314 (7th Cir. 2018). As was noted in *Arreola v. Godinez*, "Rule 23 gives the district courts broad discretion to determine whether certification of a class-action lawsuit is appropriate." 546 F.3d 788, 794 (7th Cir. 2008).

First, a Plaintiff must show "numerosity," such that joinder of all members of the proposed class is impracticable. Fed. R. Civ. P. 23(a)(1). A class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). While Plaintiffs are not required to specify exact number of persons in proposed class, they cannot rely on conclusory allegations that joinder is

impracticable or on speculation as to size of class in order to prove numerosity. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir. 1989).

Here, Plaintiffs fail to meet the numerosity requirement for the Plaintiff Class. Plaintiffs do not know the number of the class. While knowing the exact number of class size is not necessary, all that Plaintiffs allege is that the number is "believed to be so great that joinder would be impractical if not impossible." [Dkt. # 6, p. 12]. Plaintiffs cannot rely on such conclusory allegations nor speculate as to size of class to prove numerosity. *See id.* As to the Defendant Class, the number of possible defendants is relatively small and consists merely of the District, the Board, the members, and staff. The number of individuals involved is not so numerous that class certification is necessary. Thus, since Plaintiffs likely failed to meet their burden in showing the numerosity requirement, Plaintiffs' request for provisional class certification must be denied.

Second, a Plaintiff must show there are questions of law and/or fact common to the class in the "commonality" prong. Fed. R. Civ. P. 23(a)(2). Superficial common questions like whether each class member "suffered a violation of the same provision of law" do not suffice. *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Howard*, 989 F.3d at 598. Rather, the class claims "must depend on a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. The key to commonality is "not the raising of common 'questions' ... but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.*

Here, Plaintiffs also fail to meet the commonality requirement. First, the only proof Plaintiffs offer is that the Plaintiffs' claims "share common questions of law and fact." [Dkt. # 6,

p. 13]. This is a mere conclusory statement, rather than any real showing. Plaintiffs do not expand on this whatsoever and thus cannot be said to have met their burden by preponderance of the evidence. Second, there are many dissimilarities within the proposed class that impede the generation of common answers. The class is composed of a wide variety of individuals, including, but not limited to, children who are unable to wear masks for medical reasons, individuals who support mask mandates, individuals who are opposed to mask mandates, and individuals who would refuse to consent to being part of the class. Such dissimilarities clearly have the potential to impede generation of common answers. As to the Defendant Class, the individual members consist of different legal entities each of whom bear different responsibility when it comes to the creation and/or enforcement of District policy. As such, no commonality can be shown for the proposed Defendant Class. Thus, since Plaintiffs likely failed to meet their burden in showing the commonality requirement, Plaintiffs' request for provisional class certification must be denied.

Third, a Plaintiff must show that there is "typicality," and claims or defenses of the party as a representative are typical of the entire proposed class. Fed. R. Civ. P. 23(a)(3). Though a separate inquiry from the commonality question, conclusions under the typicality prong often flow from the same basic analysis under the commonality prong. *See Priddy v. Health Care Servs. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) ("Commonality and typicality 'tend to merge.'"). Generally, class representative's claim is typical, for class certification purposes, if it arises from same event or practice or course of conduct that gives rise to claims of other class members and her claims are based on same legal theory. *McFields v. Dart*, 982 F.3d 511 (7th Cir. 2020). Named plaintiffs' claims must also share the same essential characteristics as the class at large. *Howard*, 989 F.3d at 587. Just because a claim is based on the same "course of conduct" that affected all members of the class does not mean that the claim has "the same essential characteristics as the

claims of the class at large," which is what "the requirement is meant to ensure." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993) (finding the facts in McFields's claim apart from those of the other putative class members). Evaluating the plaintiffs' claims "requires a 'highly individualized inquiry.'" *McFields*, 982 F.3d at 511. Overwhelming factual distinctions can defeat any "essential characteristics" across the claims. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009); *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Here, Plaintiffs fail to meet the typicality requirement. Plaintiffs allege that the Plaintiffs' claims arise from the same course of conduct that affected all members of the class. The course of conduct Plaintiffs' allege is Defendants' "reckless refusal to implement reasonable COVID-19 mitigation measures." [Dkt. # 6, p. 13]. As will be discussed in the sections below, Defendants' COVID-19 mitigation measures are in compliance with the regulatory guidance. Thus, such course of conduct cannot be said to have affected all members of the class sufficient to support all of the class members' claims. Additionally, named Plaintiff's claims do not share the same essential characteristics as the class at large. An individualized inquiry into the Plaintiffs' claims reveals that there are overwhelming factual distinctions that would defeat any potential essential characteristics across Plaintiffs' claims that could be found. As discussed above, there are children who are unable to wear masks for medical reasons, individuals who support mask mandates, individuals who are opposed to mask mandates, and individuals who would refuse to consent to being part of the class. Such factual distinctions are overwhelming and show a clear divide among the Plaintiffs' claims. The same holds true for the proposed Defendant Class. The two entities – the District and the Board – can take no action as any action by same is done through individual representatives. Board members create policy while public officials enforce the policies enacted

by the Board. Their positions, duties, and authorities require different legal defenses not common across the proposed class. Thus, since Plaintiffs likely failed to meet their burden in showing the typicality requirement, Plaintiffs' request for provisional class certification must be denied.

Fourth, a Plaintiff must make a showing that the proposed representative will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). It also screens for conflicts of interest among class members because the same representative parties cannot adequately represent class members with divergent interests. *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012). The 7th Circuit has made clear, however, that "the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses" does not necessarily prevent class certification. *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013). To satisfy adequacy of representation requirement for class certification, class representative must be part of class and must possess same interest and suffer same injury as other class members. *Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020); *Wal-Mart*, 564 U.S. at 348.

Here, Plaintiffs also fail to meet the fair and adequate representation requirement. The class representative in this case cannot adequately represent class members with divergent interests. Additionally, the class representative cannot be said to possess the same interest as every other class member. As discussed above, there are children who are unable to wear masks for medical reasons, individuals who support mask mandates, individuals who are opposed to mask mandates, and individuals who would refuse to consent to being part of the class. Such interests clearly vary and diverge. Such interests are likely already in conflict due to the great divisiveness of this particular issue. As for the proposed Defendant Class, the position of the Board members who

14

created the policy may be different than that of the public officials and staff members who were required to enforce a policy in which they played no role in creating. Thus, since Plaintiffs likely failed to meet their burden in showing the fair and adequate representation requirement, Plaintiffs' request for provisional class certification must be denied.

Fifth and final, under the federal rule governing class actions, a class must be clearly defined. *Mullins*, 795 F.3d at 654. While it is true is that a class will often include persons who have not been injured by the defendant's conduct and that such a possibility does not preclude class certification, *Carnegie v. Household Int'l*, 376 F.3d 656, 661 (7th Cir.2004), if a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360 (7th Cir. 2015).

Here, the class is likely too broadly defined. The class in the present case is defined as "all K-12 students attending public schools in the state of Wisconsin, who have become infected with Covid-19 at school and their Next Friends." [Dkt. # 6, p. 12]. This definition is likely defined too broadly as to include a great number of members who could not have been harmed by the alleged conduct by the Defendants. For example, Plaintiffs seek a temporary restraining order to force a mandatory mask mandate to prevent the spread of COVID-19 and allege that Defendants engaged in misconduct by not having one in place. However, as mentioned in the Complaint, Defendants previously had a mask mandate in place: "[d]uring the 2020-2021 School year, schooling throughout Wisconsin was either conducted virtually, or in person with Covid-19 mitigation strategies in place including universal masking." Exhibit ___. Defendants still had a number of individuals contract COVID-19 when the mask mandate was in place. Exhibit___? Yet, under this definition of class, those individuals would still fall within the class. Those individuals cannot be

said to have been harmed by Defendants' lack of mask mandate, because they contracted COVID-19 when there was a mask mandate. Thus, since Plaintiffs likely failed to meet their burden in clearly defining the class, Plaintiffs' request for provisional class certification must be denied.

Therefore, this Court should deny Plaintiffs' request for provisional class certification because Plaintiffs failed to satisfy all class certification requirements by a preponderance of the evidence.

## II.    The Court Should Deny Plaintiffs' Request for a Temporary Restraining Order, because Plaintiffs Cannot Satisfy the Requirements for Showing an Immediate, Irreparable Loss Will Occur Without It.

Plaintiffs cannot show an irreparable loss will occur without a preliminary injunction, because of the mitigation measures already in place. Because the District has already recommended universal masking, and given the non-mandatory nature of CDC, DPI, and DHS guidance urging universal masking within K-12 schools, the plaintiffs are not entitled to the injunctive relief requested. The District offers two attendance options for the 2021-2022 school year: (1) attend school in-person, recognizing the District's recommendation that all students wear masks; or (2) attend school virtually. Collectively, these options comply with CDC, DPI, and DHS recommendations, as students may choose whether to attend in-person, and whether to wear a mask if they have chosen to attend in-person. To assuage the concerns of students—and parents— who are not comfortable with the fact that some individuals may choose not to wear masks, the District provides the option of virtual attendance.

In short, the plaintiffs have no basis to obtain the injunctive relief they request because the CDC, DPI, and DHS guidance does not impose a universal masking mandate, but instead gives school districts discretion to act upon their recommendation. At present, the only masking mandate applicable to school districts concerns school bus transportation; on January 29, 2021,

the CDC issued an order under Section 361 of the Public Health Service Act, requiring individuals to wear masks while on conveyances and at transportation hubs. *Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, Centers for Disease Control and Prevention (Jan. 29, 2021), available at https://www.cdc.gov/quarantine/pdf/Mask-Order-CDC_GMTF_01-29-21-p.pdf; 42 U.S.C. 264; 42 C.F.R. 70.2, 71.31(b), 71.32(b). Pursuant to this CDC order, students and staff members must wear masks while on board school buses. Aside from this mandate, however, the present guidance from the CDC, DPI, and DHS is precisely that: a recommended course of action, which school districts have the freedom to alter or reject.

For example, the CDC issued updated guidance for fully vaccinated people on August 4, 2021, recommending universal indoor masking for all teachers, staff, students, and visitors to K-12 schools regardless of vaccination status and given new evidence on the B.1.617.2 ("Delta") variant. *Guidance for COVID-19 Prevention in K-12 Schools*, Center for Disease Control and Prevention (Aug. 4, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html. Within this new guidance, the CDC stressed the need for children to return to full-time, in-person learning with layered prevention strategies in place. In addition to universal indoor masking, the CDC also recommends that schools maintain at least three (3) feet of physical distance between students within classrooms to reduce transmission risk and implement layered prevention strategies, such as screening, ventilation, handwashing, and contact-tracing. Therefore, the CDC's August communication recommends—but does not mandate—that schools implement a number of COVID-19 prevention and mitigation measures, with masking thereby representing one such voluntary measure.

The Wisconsin Department of Public Instruction agrees with the CDC on universal masking, having issued updated COVID-19 recommendations for the 2021-2022 school year in

September of 2021. *COVID-19 Infection Control and Mitigation Measures for Wisconsin Schools 2021/2022*, Wisconsin Department of Public Instruction (Sept. 30, 2021), available at https://dpi.wi.gov/sites/default/files/imce/sspw/pdf/DPI_Infection_Control_and_Mitigation_Measures_for_Schools.pdf. Within these updated guidelines, the DPI encourages schools to require masks for all children and adults while indoors and to use layered mitigation and prevention measures. However, the DPI confirms within its September publication that its purpose remains to provide state-level guidance; DPI does not mandate the protective measures it recommends, and it recognizes that school decisions are based on not only the families they serve and staff they employ, but also on local community circumstances. After indicating that the "wearing of face masks by students and staff is a district decision," DPI recommends that "all students older than 2 years and all school staff wear face masks at school (unless medical or developmental conditions prohibit use) regardless of vaccination status," which aligns with school guidance from the American Academy of Pediatrics, the CDC, and DHS. *Id.* at 5.

Finally, DHS echoes the sentiments expressed through CDC and DPI guidance in the recommendations it published on August 8, 2021. *Guidelines for the Prevention, Investigation, and Control of COVID-19 Outbreaks in K-12 Schools in Wisconsin*, Wisconsin Department of Health Services (Aug. 8, 2021), available at https://www.dhs.wisconsin.gov/publications/p02757.pdf. As with the CDC and DPI, DHS stresses the importance of masking, particularly when physical distancing or other prevention strategies cannot be maintained, but it does not explicitly require masking with K-12 schools. *Id.* at 4. Above all, DHS emphasizes the priority of safely returning to in-person instruction for the 2021-2022 school year, and it provides guideposts to school districts to aid in their pursuit of this goal.

18

Plaintiffs seek a "one-size-fits-all" solution to the COVID pandemic, without considering the fact it takes a layer approach to truly protect students. Plaintiffs have not demonstrated how their proposed relief – a universal masking policy – would be effective in slowing the spread of COVID. Such a proposal ignores other suggested mitigation strategies such as vaccination, sufficient handwashing, social distancing, physical barriers, testing, daily self-assessment, and contract tracing. Likewise, Plaintiffs approach fails to consider the issues identified by the CDC when it comes to children wearing masks: masks often do not fit children, children often wear masks improperly, it is exceptionally difficult to keep masks on children all day long, masks often cause children to touch their faces more often thus increasing transmission, and children remove their masks while eating/drinking.[3]

Plaintiffs universal mask request also ignores the realities regarding the different levels of risk based on the patterns of spread across the state. Ultimately, given the wide latitude afforded states in the realm of education, the court would far exceed its equitable powers and unduly restrict school district discretion in granting this sort of injunctive relief. Plaintiffs cannot show the measured flexibility the District allows students and their families in choosing whether to act upon its masking recommendation would result in irreparable injury, loss, or damage, such that injunctive relief is appropriate. District recommendations in line with the CDC, DPI and DHS, combined with the option families may elect in choosing to enroll in virtual school, which eliminates the risk of transmission in a classroom setting, create a factual basis where Plaintiffs cannot prevail on the merits of their claim. Further, Plaintiffs cannot show irreparable harm will result in the absence of an injunction.

---

[3] See, e.g., https://www.healthychildren.org/English/health-issues/conditions/COVID-19/Pages/Cloth-Face-Coverings-for-Children-During-COVID-19.aspx

**III.    The Court Should Deny Plaintiffs' Request for a Temporary Restraining Order, because Plaintiffs Cannot Show That Ex Parte Relief Would be Proper.**

In rare circumstances, Fed. R. Civ. P. 65 enables a plaintiff to obtain a temporary restraining order ex parte. Courts are reluctant to grant ex parte temporary restraining orders and generally only do so when notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing. *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984). Even where there are no practical obstacles to giving notice to the adverse party, an ex parte order is justified only if there are no less drastic means for protecting the plaintiff's interests. *Id.* at 323. To show that a less drastic order would not have been sufficient to protect its interests, plaintiff must show, in effect, that notice to the defendant would render fruitless the further prosecution of the action. *Am. Can Co.*, 742 F.2d at 322-23. The 7th Circuit in *Am. Can Co.* held that the district court abused its discretion by ordering ex parte relief when there was no valid reason for proceeding ex parte and by disregarding the strict procedural requirements of Fed. R. Civ. P. 65(b) for the issuance of such ex parte orders. *Am. Can Co. v. Mansukhani*, 742 F.2d at 321.

First, in *Am. Can Co.*, the identities of the defendants and their attorneys were known to plaintiff and to the district court well before the issuance of the temporary restraining order. *Id.* Moreover, time was not a pressing factor, because the district court did not issue the order until six days after the plaintiff first made its ex parte application. *Id.* During that period, neither the plaintiff nor the court made any effort to notify defendants of the proceedings. *Id.* The plaintiff even agreed that notice could have been given to the defendants. *Id.* Thus, since notice was not impossible, the plaintiff in *Am. Can Co.* failed to show that ex parte relief would have been proper.

In the present case, notice was not impossible and thus, ex parte relief would be improper. Plaintiffs clearly knew the identities of the Defendants and was able to locate them in time for a

hearing. First, counsel for Defendants filed a Notice of Appearance on October 14, 2021. [Dkt. # 5]. One day later, on October 15, 2021, Plaintiffs filed their Motion for Temporary Restraining Order. [Dkt. # 6]. Second, Plaintiffs' attorney emailed counsel for Defendants the morning of October 15, 2021 stating he noticed Defendants' counsel had "filed into the case yesterday." [JLW Aff. ¶ 4 – 5, Exh. A]. Analogous to the plaintiff in the *Am. Can Co.* case who knew the identities of the defendants and their attorneys, so too did Plaintiffs in this case. Thus, because notice was not impossible, ex parte relief would be improper.

Additionally, in *Am. Can Co.*, there were less drastic means available to preserve plaintiff's interests. The court could have issued an order commanding the defendants to preserve certain inks and documents for a few hours until a hearing could have been held. *Id.* at 323. The court found plaintiff did not show the defendants would have deliberately disregarded a direct court order to preserve inks and documents for a few hours. *Id.* Thus, because there were less drastic means available, the plaintiff in *Am. Can Co.* failed to show that ex parte relief would have been proper.

Here too, there were less drastic means available to protect Plaintiffs' interests. Plaintiffs want to prevent the spread of COVID-19 and negative consequences that stem from the virus, as well as potential violation of constitutional rights. Defendants share those interests and while Defendants recognize the seriousness of the negative consequences of contracting COVID-19, Defendants also have less drastic means in place to protect such interests. Defendants have a virtual learning option in place and available to all District students, which is not available statewide, nor available to every Wisconsin public school student. Additionally, Defendants maintain a policy of recommending masking pursuant to the regulatory guidance. Thus, Plaintiffs' interests are already being protected by less drastic means. Like the plaintiff in *Am. Can Co.* that

failed to show there were no less drastic means available for protecting plaintiff's interests, so too did Plaintiffs in this case. Thus, since there were less drastic means available to protect Plaintiffs' interests, ex parte relief would be improper.

Therefore, this Court should deny Plaintiffs' motion for temporary restraining order because Plaintiffs cannot show that ex parte relief would be proper where notice was possible and there were less drastic means for protecting Plaintiffs' interests available.

## IV. Even If The Court Somehow Finds Ex Parte Relief Would Be Proper, The Court Should Deny Plaintiffs' Request for a Temporary Restraining Order, Because The Motion is Defective on its Face for Failure to Comply with Fed. R. Civ. P. 65(b).

The specific requirements of Fed. R. Civ. P. 65(b) are not mere technical legal niceties. They are "strongly worded, mandatory provisions which should be respected. They are not meaningless words." *Shannon v. Retail Clerks, International Protective Association*, 128 F.2d 553, 555 (7th Cir. 1942). A temporary injunction can be an extremely powerful weapon, and when such an order is issued ex parte, the dangers of abuse are great. *See Walker v. City of Birmingham*, 388 U.S. 307, 330 (1967). Ex parte temporary restraining orders should be restricted to serving their underlying purpose of preserving status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer. *Am. Can Co.*, 742 F.2d at 314. Under Fed. R. Civ. P. 65(b)(1), the court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. In *Am. Can Co.*, the court held that ex parte relief was not proper because the plaintiff did not meet the requirements of Fed. R. Civ. P. 65(b) where the temporary restraining order did not (1) define or even mention

the injury to be prevented, (2) state why that undefined injury would have been irreparable or (3) state why the order was granted without notice. 742 F.2d at 324.

First, the stringent requirements of Fed. R. Civ. P. 65(b)(1)(b) are not met in the present case. Plaintiffs' attorney failed to certify in writing any efforts made to give notice and the reasons why it should not be required. In fact, quite the opposite occurred. In the Declaration of Frederick Melms, Plaintiffs' counsel explicitly stated "Defendants have been provided notice of this action through personal service" and "Defendants' attorneys electronically filed notices of appearance for this action on 10/14/2021." [Dkt. # 6]. Plaintiffs' counsel clearly failed to certify in writing any efforts to give notice or the reasons why it should not be required, analogous to the plaintiff in *Am. Can Co.*. Instead, Plaintiffs' counsel actually <u>admitted</u> to giving notice and being aware of the identity of Defendants and their counsel. Thus, the requirements under Fed. R. Civ. P. 65(b)(1)(b) were blatantly ignored; thus, the motion for temporary restraining order is defective on its face.

Second, even if this Court somehow finds Plaintiffs' counsel to have met the requirement of Fed. R. Civ. P. 65(b)(1)(B), the requirements under Fed. R. Civ. P. 65(b)(1)(A) remain unmet. Like the plaintiff in *Am. Can Co.*, Plaintiffs in the present case failed to clearly show that immediate and irreparable injury, loss, or damage would occur before the adverse party could be heard in opposition. As argued above, the identity of the Defendants has been known since before the motion for temporary restraining order was filed and accordingly, a hearing would have been possible. Additionally, as argued above, immediate and irreparable injury, loss, or damage has not been shown by Plaintiffs. Although COVID-19 is serious and may have fatal consequences, there are a myriad of other ways to prevent or decrease the harm, other than what Plaintiffs seek with their motion for temporary restraining order. Plaintiffs cannot show the measured flexibility the

District allows students and their families in choosing whether to act upon its masking recommendation would result in irreparable injury, loss, or damage, such that injunctive relief is appropriate. Thus, the requirements under Fed. R. Civ. P. 65(b)(1)(A) are not met and thereby, the motion for temporary restraining order is defective on its face.

Therefore, because Plaintiffs failed to meet the strict facial requirements of Fed. R. Civ. P. 65(b), this Court should deny Plaintiffs' motion for temporary restraining order.

## CONCLUSION

Plaintiffs' motion has no merit. As to the motion for TRO, Plaintiffs' blatantly ignored the statutory requirements for filing this type of motion. That, alone, merits denial of the motion. More importantly, Plaintiffs cannot demonstrate the need for such draconian action by this Honorable Court.

As to the motion for conditional class certification, Plaintiffs fail to meet any of four requirements for class certification. In addition, once this action becomes public, Plaintiffs should brace themselves for vehement opposition to their position and possible legal action by many of the parents of those students sought to be included in the Plaintiff Class.

Therefore, Defendants respectfully request the Court deny Plaintiffs' request for provisional class certification, and a temporary injunction requiring mandatory mask wearing in Wisconsin schools or in schools within the District. Plaintiffs cannot prevail on the merits as a result, and the Court should deny those motions.

Dated this 18th day of October, 2021.

Respectfully Submitted,

BUELOW VETTER BUIKEMA OLSON
& VLIET, LLC

*/s/ Joel S. Aziere*

24

Joel S. Aziere (WI Bar No. 1030823)
jaziere@buelowvetter.com
Jennifer Williams (WI Bar No. 1058087)
jwilliams@buelowvetter.com

Buelow Vetter Buikema Olson & Vliet, LLC
20855 Watertown Road, Suite 200
Waukesha, Wisconsin 53186
Telephone: (262) 364-0250
Facsimile: (262) 364-0270

*Attorneys for Defendants Waukesha Board of Education, School District of Waukesha; Joseph Como, Jr.; James Sebert; Bill Baumgart; Greg Deets; Patrick McCaffery; Corey Montiho; Kelly Piacsek; Karein Rajnicek; Amanda Roddy; Anthony Zenobia; and Does 1 – 10.*